## SPEAR *v.* WARD AND WIFE.

| 20 | 659 |
| 77 | 162 |

| 20 | 659 |
| 125 | 555 |

| 20 | 659 |
| 139 | 253 |

THE act concerning conveyances authorizes a married woman to execute a mortgage upon her real property without restriction as to purpose or person, and she may execute it for her own debt, or for the debt of her husband, or of any other person, subject to no other restraint than that imposed by the requirement of the joint execution of her husband.

Where the wife executes a mortgage upon her separate property for the debt of another, whether that other be her husband or a stranger, she becomes as to that debt a mere surety, and is entitled to all the rights and privileges of that character.

Where a bond is given in the usual form, expressing the personal obligation of the husband alone, and in connection with it, a mortgage in the usual form executed by the husband and wife, purporting to cover the separate estate of the wife as well as the interest of the husband in the premises mortgaged, the transaction will, upon its face, create the presumption that the wife is a mere surety for the husband's debt.

The presumption of the suretyship of the wife may be repelled by proof *aliunde*, showing that the debt secured was created for her benefit or that of her estate; and on like grounds, the presumption will be destroyed by a recital in the mortgage of a fact inconsistent with the theory that the wife contracted as a surety.

The wife being empowered to execute a mortgage, is *prima facie* bound by the clause stating the consideration of its execution. Such clause, subject to certain qualifications, is open to explanation and may be varied by parol proof; but in the absence of such explanation or proof, the clause is deemed to express the true consideration.

W. executed a bond to S., conditioned for the payment by him of six thousand dollars in one year with interest; and at the same time, as security for its payment, W. and wife executed a mortgage upon the separate property of the wife, which mortgage recited as the consideration of its execution the receipt of six thousand dollars by the mortgagors, "and each of them." In an action by S. to forclose the mortgage, the wife defended upon the ground that she was

a mere surety for her husband, and that the liability of her property had been discharged by an extension of the time of payment given by S. to her husband. By the pleadings, the extension of time was admitted, and the question of suretyship put in issue, and the cause was submitted without the introduction of other proof than the bond and mortgage: *Held*, that the property of the wife was bound by the mortgage—that she was not a surety for her husband, the recital as to the consideration meeting and countervailing the effect which would otherwise have arisen from the form of the transaction.

A general guardian of an infant has authority to institute an action on behalf of his ward, and where the body of the complaint shows the general guardianship of the plaintiff, a mistake in the designation of the plaintiff as guardian *ad litem* in the title of the action is one of no importance.

APPEAL from the Third Judicial District.

This action was brought for the foreclosure of a mortgage upon the undivided one-eighteenth interest in the Estudillo Rancho, Alameda county, the separate property of one of the defendants, Maria Concepcion Ward, wife of John B. Ward, another defendant.

The mortgage was executed February 24th, 1854, by Mrs. Ward and her husband to William N. Spear, a minor, to secure the payment of the bond of the husband, of the same date, executed to said Spear for $6,000, payable in one year.

The complaint shows that on February 24th, 1854, the plaintiff, by and through his then guardian, William P. Toler, at the special instance and request of J. B. Ward, and Maria Concepcion A. Ward, his wife, loaned to them the sum of $6,000 for one year, at three per cent. per month, for which said J. B. Ward executed his bond: (stating its terms substantially as appears by the copy given below) that to secure the payment of the money loaned, the husband and wife executed a mortgage: (stating its terms substantially as they appear by the copy given below) that on or about April 19th, 1858, the said W. H. Davis, appointed general guardian of the plaintiff in place of Toler, had an accounting with the said J. B. Ward and wife of the said mortgage debt, and there was then found due $13,051 06; and it was agreed that said amount should thenceforward bear interest at the rate of one per cent. per month until the whole should be paid; and that nothing had been paid since said accounting.

Spear *v.* Ward.

In the title of the suit, the plaintiff is designated as W. N. Spear by his guardian *ad litem*, W. H. Davis; but in the body of the complaint it is alleged that on the third day of December, 1857, " W. H. Davis was, by the Probate Court of Alameda county, appointed the general guardian of the person and property of the plaintiff, gave the necessary bond, became qualified, and entered upon the discharge of his duties as such guardian."

Defendant, Mrs. Ward, in her answer sets up:

1.  That the debt, to secure which the mortgage was given, was the debt of her husband alone;

2.  That the property mortgaged was her separate property;

3.  That the plaintiff knew it;

4.  That hence she was merely a surety;

5.  That being a surety, she was discharged by a valid agreement made April 19th, 1858, upon good consideration, between the principal debtor, J. B. Ward, her husband, and the general guardian of the plaintiff, thereto duly authorized, for an extension of the time of payment of the amount due by such husband upon his bond, until February 24th, 1859; which agreement for time was without her knowledge or consent.

The other defendants, and also Mrs. Ward, set up that the suit was never properly commenced; the plaintiff being an infant, over fourteen years of age, and William H. Davis, described as guardian *ad litem* in the complaint, not having been appointed according to law, before process issued.

The replication denies Mrs. Ward's suretyship and her nonconsent to the extension of time. The case was tried by the Court without a jury. The plaintiff put in evidence the bond and mortgage, of which the following are copies.

[COPY OF BOND.]

" Know all men by these presents, that I, John B. Ward, of Alameda County, State of California, am held and firmly bound unto William N. Spear, a minor, of whose person and estate William P. Toler is at present guardian, in the sum of twelve thousand dollars, to the payment of which I hereby bind myself, my heirs, executors and administrators.   Witness my hand and seal this

twenty-fourth day of February, A. D. one thousand eight hundred and fifty-four. The condition of the above obligation is such, that if the said John B. Ward shall well and truly pay unto the said William N. Spear, his guardian, executor or administrator, the sum of six thousand dollars on the twenty-fourth day of February, A. D. one thousand eight hundred and fifty-five, and shall well and truly pay monthly, and every month from the day and year of the execution of these presents until paid, interest at the rate of three per cent. per month, payable in advance, monthly, then these presents to be null, void and of no effect; otherwise, to be and remain in full force and effect.

" JOHN B. WARD."

Upon this bond were a number of endorsements of payments of interest.

[COPY OF MORTGAGE.]

" This indenture, made this twenty-fourth day of February, A. D. one thousand eight hundred and fifty-four, between John B. Ward, and Maria Concepcion Ward, his wife, of the first part, and William Nathan Spear, a minor, of whose person and estate William P. Toler is at present guardian, of the second part, all of Alameda County, State of California, witnesseth:

" That the said parties of the first part, for and in consideration of the sum of six thousand dollars, to them and each of them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain and sell unto the said party of the second part, his heirs and assigns, all the right, title, interest, estate, possession, claim and demand, of whatsoever kind or nature, of them, the said parties of the first part, and each of them, in and to a certain rancho or tract of land situated in the said County of Alameda, called San Leandro, granted by Juan B. Alvarado, Governor of the Department of California, in the year one thousand eight hundred and forty-two, to José J. Estudillo, now deceased; the boundaries of said rancho being as follows.

[Here follows a description by metes and bounds.]

" To have and to hold the said premises unto and to the use of him, the said party of the second part, his heirs and assigns forever.

This conveyance is intended as a mortgage to secure the payment of a certain bond in the penal sum of twelve thousand dollars, executed by the said John B. Ward to said party of the second part, and bearing date on the day and year of the execution of these presents; the condition of which said bond is, the payment of the sum of six thousand dollars on the ———— day of February, A. D. one thousand eight hundred and fifty-five, with interest from date until paid, at the rate of three per cent. per month, payable monthly in advance; and if such payment as aforesaid be well and truly made, then these presents shall be null and void, and of no further force and effect. But if default shall be made in the payment of such principal and interest, or any part thereof, as the same shall become due and payable as aforesaid, then the said party of the second part, his guardian, executors, administrators or assigns may, and he and they are hereby authorized to sell the whole, or any part of said premises, in the manner prescribed by law, and out of the proceeds of such sale, to pay all of such debts and interest, or so much thereof as shall remain unpaid, together with the costs and charges, and the overplus, if any, to be paid to the said Maria Concepcion Ward, her heirs or assigns.

"In witness whereof, said parties of the first part have hereunto set their hands and seals severally, the day and year first hereinbefore written.

"JOHN B. WARD,                 [L.S.]
MARIA CONCEPCION WARD."   [L.S.]

Attached to the above mortgage is a certificate in due form of its acknowledgment by both the parties executing it.

No evidence was offered by the defendants.

The Court made its decision as follows.

"This cause came on to be tried by the Court without a jury, at the term aforesaid, upon the pleadings, proofs and orders hereinbefore made, and was argued by counsel, and the Court having duly considered the same, finds the facts to be, upon the issues joined.

"1st. That on the twenty-fourth day of February, 1854, the defendant, John B. Ward, made and delivered his personal obliga-

tion in writing, and the said defendants, John B. Ward and his wife, Maria Concepcion Ward, made and delivered their joint deed of mortgage as alleged in the complaint: that said obligation and mortgage were so made and delivered to secure the payment of six thousand dollars, on that day loaned to them and each of them, by the said plaintiff, W. N. Spear, through his then guardian, William P. Toler, with interest on said sum at the rate of three per centum per month. That said mortgage was of the undivided eighteenth of the rancho of San Leandro, which was the separate property of the said Maria Concepcion Ward, as set forth in said complaint; and that said mortgage was duly acknowledged on said twenty-fourth day of February 1854; was filed for record in the office of the Recorder of Deeds in said County of Alameda, on the first day of March, 1854; and duly recorded on the eighth day of the same month.

" 2d. That after various partial payments had been made on account of the interest due on said mortgage debt, to wit: on the nineteenth day of April, 1858, an accounting was had, in which there was found to be then remaining due and unpaid, including principal and interest, the sum of thirteen thousand and fifty-one dollars and six cents. Thereupon it was agreed that from and after said last mentioned day, said sum of thirteen thousand and fifty-one dollars and six cents should bear interest at the rate of one per centum per month, in lieu of three per centum per month upon the principal sum of six thousand dollars. That no further payments have been made, and that there is now remaining due and unpaid, including principal and interest at the rate of one per cent. as aforesaid, the sum of ($18,193.15) eighteen thousand one hundred and ninety-three dollars and fifteen cents.

" 3d. That the defendants, other than the said Ward and wife, are respectively vendees or mortgagees of some portions in severalty of said rancho of San Leandro, subsequently to the recording of the plaintiff's mortgage, and subject thereto.

" As a conclusion of law, the Court finds that the plaintiff is entitled to a sale of the mortgaged premises described in the complaint, for the payment of said mortgage debt, interests and costs, subject only to the statutory right of redemption on the part of the

Spear *v.* Ward.

defendants, or either; and in case of the deficiency of the proceeds of such sale, then to have a judgment docketed for such balance remaining unpaid, with execution therefor, pursuant to the statute in such case provided."

There was a motion for a new trial, which was denied, and a final decree entered, and the defendants above mentioned appealed.

For other facts, the defendants relied upon the pleadings; but it is not deemed necessary to set forth the pleadings in full, as their purport sufficiently appears in the opinion of the Court.

*W. W. Crane* and *Eugene Casserly,* for Appellants.

I.   The premises mortgaged were the separate property of Mrs. Ward, and the debt to secure which the mortgage was given was the debt of her husband.   This appears from the pleadings, being averred directly in the answer, and not denied by the replication.

The recital in the mortgage, in the common form, of a consideration of six thousand dollars, " to them and each of them in hand paid, the receipt whereof is hereby acknowledged," is relied on, as establishing against Mrs. Ward, that the debt was the joint or joint and several debt of her and her husband, so as to make it as much hers as his.

To this view there are several objections.

The recital of the receipt of the consideration cannot have the effect contended for as against Mrs. Ward; whatever its effect as against her husband, had the mortgage covered any of his separate, or of the common property.   Not, by way of estoppel, she being a married woman, and not capable of being bound by estoppel. (*Morrison* v. *Wilson,* 13 Cal. 497–8–9, 501; *Dempsey* v. *Tylee,* 3 Duer, 100.)   Nor, by way of proof *prima facie,* as an admission of a joint or several debt due from her.   Her written obligation for such a debt would not bind or even affect her, though made in the most authentic form—of her note or bond.   (*Luning* v. *Brady,* 10 Cal. 267; *Rowe* v. *Kohle,* 4 Id. 285.)   *A fortiori,* her admission written or verbal, of such a debt could not affect her as evidence.   Much less a recital in a mortgage deed, which the allegation in the complaint that the money was " loaned to them the said

43

J. B. W. and M. C. A." etc., shows clearly was nothing in this case but an unmeaning form.

In other words, the debt, if it existed, or if such as she was capable of contracting, must be proved *aliunde*, and without reference to her promises or admissions; and it must be proved by independent facts in evidence, upon which the law, if proper to do so, will raise the obligation.

Nay, more. The recital in the mortgage, even if competent as proof, would not, of itself, show the debt to be hers, so as to make her separate property primarily liable; under the rule of evidence applicable to such cases. The presumption is, during coverture, in this State, that all property (money included) coming to the hands of either spouse, is common, and not separate; and the *onus* of proof lies strictly on him who claims the contrary. (*Meyer* v. *Kinzer*, 12 Cal. 247, 251–5, and cases cited.) And this presumption is not in the slightest degree impaired by the form of the conveyance, or its recitals, as that the consideration moved from either spouse or from both. . (Id. 253, 254, and cases cited.) So, in Louisiana, the law being that a wife is not bound by a contract made by her jointly with her husband, unless it was for her separate use and benefit; that fact must be shown affirmatively by the creditor, and it is not sufficient that her contract recites it. (*Beauregard* v. *Eimer*, 7 La. Ann. 294; *Moussier* v. *Zuntz*, 14 Id. 16–17; *Erwin* v. *McCalop*, 5 Id. 173–4.) Nor that the money borrowed came to her hands. (*Brandegee* v. *Kerr*, 7 Mart. [N. S.] 66–7; and see 65–6.)

The utmost effect that can be claimed for the recital is that it alleges a loan to the community. This, however, does not help the plaintiff. That the money borrowed became common property, and went to the benefit of the community, does not render the debt contracted for it, in any sense, the wife's debt, in a case where she mortgages her separate property for its payment. (*Davison* v. *Stuart*, 10 Louis. 146; *Yale* v. *Dederer*, 18 N. Y. 282–3; *Goodall* v. *McAdam*, 14 How. Pr. R. 385.) Besides the reason given in the cases cited, flowing from the husband's perfect *jus disponendi* over all such property, there is the further reason that the wife, as to her separate property, is to all intents and purposes

Spear *v.* Ward.

a separate person: and must especially be so regarded when she pledges it for a debt contracted, whether for the benefit of her husband's separate property or for that of the community. Dealing with her separate property, she is a separate person, as well from her husband, as from the artificial legal entity, the community.

In Pennsylvania, under the Married Woman's Act of 1848, the separate property of the wife may be made liable for " debts contracted by herself." It is held, that if this language can be construed to include a debt contracted for the improvement of her separate property, yet the avowal that it was so contracted is not sufficient; and in order to charge it, there must be affirmative proof that the money was in fact so applied. (*Heugh* v. *Jones et ux.*, 8 Casey, 432, 433.) And that the act does not impair the common law presumption, that in borrowing money the wife acts for her husband and not for herself; unless she be a sole trader, or the money be applied to the benefit of her separate estate. (Id. 34.)

It follows, not only from the legal presumptions affecting the case, but also expressly from the pleadings of Mrs. Ward, that 'the debt for which she gave the mortgage was not her debt, but was that of her husband. Respondent's counsel argues thas the denials of Mrs. Ward, in her answer, that the money was loaned to her " either jointly with her husband or severally, etc., or otherwise," are but an affirmative form of denial, and not requiring to be traversed by the replication. Granting this, it does not absolve the respondent (as the plaintiff) from the necessity of proving the allegation of his complaint thus put in issue. This he did not do, except by giving in evidence the mortgage, and the recital therein, in the common form, of the receipt of the consideration " to them and each of them in hand paid." This was not sufficient as against Mrs. Ward, a married woman, under the laws of this State, in a proceeding to reach her separate property.

II. The contract of mortgage only binds Mrs. Ward as surety of her husband, she having all the rights and liabilities of a surety in this case.

1st. The rule is perfectly settled, that when a married woman pledges her separate property for the debt of her husband, she is a surety and not a principal, and entitled to all the benefits of that

relation; and there is no other presumption of law, in the absence of express proof to the contrary. (*Loomer* v. *Wheelwright*, 3 Sandf. Ch. 135, 155–6; *Vartie* v. *Underwood*, 18 Barb. 561, 563–4; *Hawley* v. *Bradford*, 9 Paige, 201; *Fitch* v. *Cotheal*, 2 Sandf. Ch. 29; *Wheelwright* v. *Depeyster*, 4 Edw. Ch. 244, etc.; *Parteriche* v. *Powlet*, 2 Atk. 384.) What that proof must be, the same authorities show, and that the burden of it is always on the plaintiff.

2d. The denial in the replication that Mrs. Ward contracted as "surety," is merely a denial of a conclusion of law; and is no denial. The facts shown in the pleadings made her a surety, and no other proof was necessary. (*Vartie* v. *Underwood*, 18 Barb. 563–4; and the other cases above.)

III. Being a surety in this case, Mrs. Ward was discharged by the agreement under seal of April 19th, 1858, for an extension of the time of payment of the debt, duly made between W. H. Davis, guardian, etc., and J. B. Ward, upon a valid consideration; which agreement was without her knowledge or consent.

1st. The circumstances of this agreement, and its terms, are set forth in Mrs. Ward's answer.

2d. The consideration was a valid one, namely: the guaranty, under seal, of Mrs. Estudillo, the mother of Mrs. Ward, of the payment of the amount found due upon the mortgage, upon the expiration of the extended term, February 24th, 1859.

3d. The agreement was made between Davis, guardian, etc., and J. B. Ward, and as is alleged by Mrs. Ward in her answer, "wholly without her knowledge, privity or consent."

4th. The general principle is conceded by respondent's counsel. But he contends that even if Mrs. Ward was a surety, she was not discharged, because the agreement for an extension was, as to the infant, a nullity, being the mere unauthorized act of the guardian Davis.

This ground, we think, cannot now be taken, on the pleadings. The authority of Davis, as guardian, to make the agreement is sufficiently alleged in the answer, and nowhere denied in the replication.

And without regard to the pleadings, and on general principles of law, the objection is not tenable.

Spear *v.* Ward.

Counsel here discuss this question at length, but it is unnecessary to give the heads of their argument, as the point is not considered by the Court.

IV.   The action was not well brought in the name of Spear by W. H. Davis, guardian *ad litem*, on the ground that the infant being over fourteen years of age, the appointment of a guardian in the suit should have been before process issued on the application of the infant.

The title of the suit is: " W. N. Spear, by his Guardian *ad litem,* W. H. Davis; " and the complaint commences : " For cause of complaint said plaintiff states," etc.

The Practice Act, sections nine and ten, prescribes the manner in which an infant of the age of fourteen years shall " appear " in an action.    He must make an application to the Court for the appointment of a guardian in the suit, and until such application, the infant is not before the Court, and until the appointment of a guardian for the suit by the Court, upon such application, he is under a legal disability to sue.

*E. W. F. Sloan & A. M. Crane,* for Respondent.

I.   Mrs. Ward was not a mere surety for her husband ; and even if she were such surety, there is no proof that the mortgagee, W. N. Spear, was advised of the fact.    The written agreement of the nineteenth of April, 1858, was not the contract of the plaintiff Spear, or in any way obligatory on him.

The complaint alleges that the $6,000 were loaned to John B. Ward and Maria C. Ward, at the special application of them, and each of them.

The answer denies this, alleging that the loan was made to and for the use of the husband only.

Counsel for the appellants contend, that the replication does not traverse the allegations of the answer, and that, therefore, they are to be taken for true.

But what new matter, " constituting a defense " does the answer contain ?   It denies that the money was loaned to Mrs. Ward and husband both ; it avers that it was loaned to him alone.    But that averment is not a statement of new matter.    It is only an affirmative form of denying that the loan was made to both of them.

The answer also avers that the land mortgaged was her separate estate. That fact, however, appears on the face of the complaint, and has never been disputed.

It avers that she was a mere surety for her husband.

But that allegation is expressly denied by the replication.

The evidence on this point, apart from the pleadings, consists of the bond and mortgage.

The wife could not bind herself by a personal contract, hence her husband alone made the bond.

She could not mortgage her separate estate, except by joint deed of herself and husband, and hence he united with her in the execution of the mortgage.

The circumstance, therefore, that the bond was given by the husband only, whilst he joined in the mortgage of her separate estate, is perfectly consistent with the supposition that the money was received by her alone, for her sole separate use. (*Neimcewicz* v. *Gahn*, 3 Paige, 643, 651; *Gahn* v. *Neimcewicz*, 11 Wend. 324.)

It is not alleged in the answer, nor is it pretended in argument, that the bond and mortgage were given to secure the payment of a debt contracted by the husband prior to marriage, or of a previous liability of his.

There is no dispute as to the loan of the infant's money at the date of the mortgage. The language of the mortgage is: " That the said parties of the first part, for and in consideration of the sum of $6,000, to them and each of them in hand paid by the party of the second part," etc.

Is not this evidence against her? The general doctrine, that a married woman cannot be bound by an equitable estoppel *in pais*, (13 Cal. 497) has nothing to do with the question. Ordinarily, she is not bound by a personal covenant contained in her deeds of conveyance, so far, at least, as the same extend to the execution of further assurance, or the passing of an after-acquired estate; yet, this disability does not exist, as to a covenant which is necessary effectually to transmit " all her rights and interests expressed to be conveyed in such deed." (Act concerning Conveyances of 1850, section 20.)

When a sale of her separate property is made for the benefit of

her husband; or when he shall have used the proceeds with her written consent, it is deemed a gift. (Act concerning Husband and Wife, section 7.)

A declaration in a deed of bargain and sale of the wife's separate property, to the effect that it was made for the benefit of her husband; or by her written permission to him to appropriate the proceeds, would be evidence that a gift was intended.

It is her own acknowledgment, duly certified, which gives vitality to her deed.    She is not a competent witness for or against her husband.    Nor will he be bound by her admissions except where she is acting as his agent or attorney.

But there is no principle of policy, or rule of law, which prevents her admissions or statements from being used as evidence against herself.    (3 Paige's Rep. 643, 651; 11 Wend. Rep. 324.)

But counsel for the appellants have cited cases from Louisiana to show that, in order to hold the wife liable as a principal debtor, the plaintiff must prove by evidence *aliunde* that the consideration money was applied to her exclusive benefit.

The Louisiana cases are no authority upon the point under consideration.    They are governed by positive rules of law, which exist in no other State.

In Louisiana, a married woman may become personally liable on the joint promissory note of herself and her husband. But she cannot become surety for him in any form of contract. (*Durnford* v. *Gross & Wife*, 7 Martin O. S. 475.)

It is submitted that Maria C. Ward cannot be regarded a mere surety, but a principal debtor to the extent of her estate mortgaged.

II.    But suppose in point of fact, as between herself and husband she was a surety only: there is not the slightest evidence tending to prove that the plaintiff W. N. Spear ever knew it.    The answer does not even state that he had knowledge of the supposed fact.    The charge is that it was known to his guardian.    Why was he not introduced as a witness to prove the alleged fact?    That, however, is an immaterial allegation.    The supposed fact must be established before knowledge of it can be brought home to any one.

III.   The agreement of April 19th, 1858, was not made by the mortgagee.   Nor could it have been obligatory upon him.   Perhaps the consideration was sufficient to make the contract binding on Wm. H. Davis.   It was, however, but an undertaking on his part, that the infant Spear would not sue to foreclose until the twenty-fourth of February, 1859.   (*Foster* v. *Fuller*, 6 Mass. R. 58; *Jones* v. *Brewer*, 1 Pick. R. 314; *Oliver* v. *Howlet*, 13 Mass. R. 237.)

Spear, by his guardian *ad litem*, could have sued to foreclose the mortgage immediately after the making of that contract by Davis, and the agreement itself could not have been set up in bar, or abatement of the suit.

Davis might have been held liable on his agreement for any damages actually sustained by John B. Ward, because of the breach.   But it could not divest the plaintiff of his right to sue at any moment.

The guardian under our statute can only dispose of the personal estate of his ward by order of the Probate Court.   (Comp. Laws, 157, Chap. 29, sec. 19.)

He may convert his ward's real estate into productive stocks by order of that Court, upon showing that it would be beneficial to the infant.   (Comp. Laws, 398.)

But where does he get authority to sell or dispose of his ward's choses in action at all?   He can only release to the extent of actual payment.   (*Witman* v. *Geisinger's Appeal*, 28 Penn. R. 378.)

It is evident, then, that even if Maria C. Ward is to be regarded as a surety only, she was not discharged by the contract between Davis and J. B. Ward, because it did not interfere in any way with her liabilities, rights or privileges as such surety.

She could have paid the debt at once, and been subrogated to the rights of the plaintiff as against her husband, or pursued any other remedy which the relation of principal and surety entitled her to.

There are no merits in the defense attempted to be set up.

IV.   The fact that Davis was the general guardian of the person and estate of Spear is expressly stated in both the complaint and answer.   And such being the fact, " there was no occasion for

his special appointment as guardian *ad litem* in the action." (*Gon-frier* v. *Puymirol*, 19 Cal. 632.)

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

This is an action to foreclose a mortgage executed to the plaintiff in February, 1854, by the defendants, John B. Ward and Maria, his wife, upon the separate property of the wife, to secure the bond of the husband of the same date. The mortgage states as the consideration of its execution the receipt of $6,000 by the mortgagors, " and each of them," and the bond of the husband is conditioned for the payment of the $6,000 in one year, with interest at three per cent. a month.

The plaintiff is a minor, and Davis, by whom he appears in the action, is his general guardian. In the title of the action Davis is designated as guardian *ad litem*, but in the body of the complaint he is described as the general guardian of the plaintiff.

Upon the bond, partial payments of interest were made until April, 1858, when an accounting was had between Ward and Davis, and a balance found due the plaintiff of about $13,000. It was then agreed between them that the interest on the balance should be reduced to one per cent. a month, and the payment of the balance be extended to February, 1859.

As a defense to the foreclosure, the defendant, Mrs. Ward, who alone answered upon the merits, contends substantially as follows: first, that the debt for which the bond was given, and to secure which the mortgage was executed, was the debt of her husband, and that by the execution of the mortgage upon her separate property she became merely surety for him; second, that the contract extending the time for the payment of the balance due on the bond was made without her knowledge or consent, and in consideration of the guaranty of the amount due by a third party; and that by it her separate property was discharged of the lien of the mortgage; and third, that the action was improperly brought, inasmuch as Davis was not appointed guardian *ad litem*, as designated in the title, before the action was commenced.

The only proof offered in the case was the bond and mortgage.

For the facts, upon which the defense chiefly rests, reliance is placed upon supposed admissions of the pleadings.

The Act concerning Conveyances authorizes a married woman to execute a mortgage upon her real property, without restriction as to purpose or person.  (Secs. 19 and 36.)  She may execute it for her own debt, or for the debt of her husband, or of any other person.  The only restraint attempted upon her absolute power in ᛫this respect, results from the requirement of the joint execution of her husband.  But when she executes a mortgage upon her separate property for the debt of another, she becomes as to that debt a mere surety.  She is not, it is true, personally bound, but her property is; and there is no distinction, in principle, between pledging one's personal responsibility for the payment of a debt, and pledging one's property for that purpose.  And her character as surety is not affected by the fact that the debt secured is that of her husband.  Her separate property cannot be reached without her consent for his debt, nor can its rents or profits.  (*George* v. *Ransom*, 15 Cal. 322.)  With respect to such debt, she holds her property as absolutely free as though she were a *femme sole.* (*Neimcewicz* v. *Gahn*, 3 Paige, 614; same case in Court of Errors, 11 Wend. 318.)  As surety for the debt of her husband, she is entitled to all the rights and privileges of that character.  The principal question, then, for consideration in the present case is, whether the debt for which the bond was given, and the mortgage executed, was the individual debt of the husband.  The complaint alleges that the bond was given for moneys received by the mortgagors, " and each of them."  The answer denies the allegation, and avers that the bond was given for the individual debt of the husband.  The affirmative allegation does not constitute new matter to which a replication was necessary.  No evidence was given on the subject, and the question, therefore, rests for its solution upon the form of the bond and mortgage, and upon the recital in the latter.  The bond is in the usual form, expressing the personal obligation of the husband, and conditioned upon *his* payment of $6,000 in one year, with interest at three per cent. a month.  It shows upon its face an individual debt of the husband, and nothing else.  The mortgage is also in the usual form of such

instruments, and purports to cover the separate estate of the wife, as well as the interest of the husband in the premises described. The suretyship of the wife, though not expressed in terms upon its face, would follow (were it not for the consideration clause) as an inference, from the fact that the mortgage is executed upon her separate property, taken in connection with the bond of her husband. (*Loomer* v. *Wheelwright*, 3 Sand. Ch. 154.) The transaction, but for that clause, would, upon its face, be deemed one of suretyship. As between the mortgagors and the creditor in such case, evidence is admissible to show, as against its form, the real character of the transaction. "It is well settled," says Mr. Chief Justice Nelson, "that if the loan, to secure which the wife has pledged her separate property, was intended for the benefit of her estate, or as a bounty to the husband," (or, as we may add, for her own benefit) "the relation of principal and surety, or debtor and creditor, does not exist between them." (11 Wend. 325.) And it requires only slight proof to overcome the effect arising from the form of the transaction as between the parties. Substantially the same form would be followed, if the loan were made expressly for the benefit of the separate estate of the wife, or for her own benefit, with the knowledge of the mortgagee. (3 Paige, 651.) The mortgage, in such case, would be taken upon her separate property, and if any personal obligation were required, it would have to come from her husband or a third party. The wife is incapable of contracting a personal obligation. Her disability in this respect, arising from her coverture, exists in this State as at common law. If she should sign a bond, it would not be binding upon her personally. If she should unite with her husband in the bond, it would still remain invalid, except as his individual contract.

In the present case, the consideration clause in the mortgage is the evidence produced to overcome the effect arising from the form of the transaction between the parties. The pleadings do not affect the question. The answer alleges the suretyship of the wife, and the contract extending the payment of the balance due, to discharge the lien upon her separate property. The replication traverses the allegation of suretyship, and until this allegation is sustained, the

character of the contract is immaterial. No proof was offered upon the question of suretyship, and the case stands, so far as the defense is concerned, upon the form of the instruments. The question, then, is as to the effect of the admission furnished by the consideration clause—that the mortgage was executed for moneys received by the mortgagors, "and each of them." This admission meets, and, as we conceive, countervails the effect otherwise arising from the form of the transaction. The wife being empowered to execute a mortgage is *prima facie* bound by the clause stating the consideration of its execution. Such clause, it is true, is not conclusive; subject to certain qualifications it is open to explanation, and may by varied by parol proof. (*Bennett* v. *Solomon*, 6 Cal. 135 ; *McCrea* v. *Purmort*, 16 Wend. 460.) But when no such explanation is made, or proof offered, the clause must be deemed to express the actual consideration. The mortgage then must be held to have been executed in consideration of $6,000 received by both husband and wife. For this money, the husband gave a personal security in his bond; the wife gave a real security in her mortgage. The bond and mortgage are of even date, and parts of one transaction. In a transaction of this character, the wife does not occupy with reference to the mortgagee the position of surety for her husband, but is a principal with him.

The objection urged to the character in which the guardian appears is without force. He was authorized to institute the action as general guardian of the plaintiff. If he was not properly appointed guardian *ad litem* before the commencement of the action, the title is incorrect. The body of the complaint shows sufficiently his relation to his ward to justify the institution of the action on his part. (Act to provide for the appointment and to prescribe the duties of Guardians, of April 19th, 1850, sec. 1 ; *Gronfier* v. *Puymirol*, 19 Cal. 629.)

Judgment affirmed.