[L. A. No. 3626. Department One.—June 20, 1916.]

# W. H. CALLAHAN, Respondent, v. J. M. DANZIGER et al., Appellants.

ATTACHMENT—PERISHABLE PROPERTY—SALE OF—CONSTRUCTION OF SEC-
TION 547, CODE OF CIVIL PROCEDURE.—The mere fact that property
under attachment actually lessened in value and became worse by
reason of having been kept is not the criterion whether it should
have been disposed of as perishable property. It is only where the
property, because of its nature or inherent qualities, is liable to
material depreciation in value from decay or other causes pending
the termination of the litigation that section 547 of the Code of
Civil Procedure authorizes its sale without an order of court.

ID.—KEEPER'S FEES—DELAY IN TRIAL—RIGHT OF DEFENDANTS TO PRO-
CEED.—If the defendants in an action in which property has been
attached desire to have the case tried after it is at issue, to minimize
keeper's fees, they have the right, under section 594 of the Code of
Civil Procedure, to have it set.

ID.—REMEDIES OF DEFENDANTS—SALE OF ATTACHED PROPERTY—GIVING
BOND.—The remedy available to defendants in such an action, had
they actually desired to have the property sold before the termination
of the action, would have been to apply to the court for an order
directing its sale; and if it had been made to appear satisfactorily
to the court that the interests of the parties would have been sub-
served by a sale thereof, it would have been its duty to make such
an order without regard to the question whether or not the property
was perishable, or the defendants could have avoided the expense
of keeper's fees by having the attachment released under bond.

ID.—DUTY OF SHERIFF—EXECUTION OF WRIT—PRESERVATION OF PROP-
ERTY.—The sheriff has no discretion but to obey the writ com-
manding him to "attach and safely keep all the property," and it is
his duty to preserve such property at his peril, although he should
make the expense of keeping it as light as possible consistent with
its safekeeping.

ID.—MOVABLE PROPERTY—RIGHT OF SHERIFF TO PUT KEEPER IN CHARGE.
Where attached property, consisting of lumber blown down from
rigs, rig timbers, galvanized iron tanks, rig irons, shovels, picks,
stoves, cooking utensils, bedding, and various implements used in
connection with the business of drilling and mining for oil, also a
frame house, a derrick, a rig blown down and other rigs in place,
was scattered over a considerable area in two separate tracts in
different townships, the contention that the frame house, derrick,
and rigs being affixed to the soil should have been attached as
real property is attached, cannot be maintained, and the sheriff

was justified in putting a keeper in charge of the property, where a large part of the property was capable of being dismantled and carried away.

APPEAL from an order of the Superior Court of Kern County denying a motion to tax costs and to strike from the cost bill certain items for keeper's fees. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Rollin Laird, and George E. Whitaker, for Appellants.

E. F. Brittan, and Rowen Irwin, for Respondent.

LAWLOR, J.—Appeal from an order made after final judgment denying the appellants' motion to have the costs taxed by the court, and to strike from the cost bill certain items relating to keepers' fees.

The action in which this proceeding arose was commenced on December 18, 1911, to recover of the Lost Hills Syndicate, E. A. Wiltsee, J. M. Danziger, J. M. Kent and others, the sum of $1,170.42, for wages and for moneys advanced. Personal service was made on defendants Danziger and Kent. On December 20, 1911, a writ of attachment was issued and levied upon personalty and fixtures consisting principally of 2,000 feet of lumber blown down from rigs, about 2,000 feet of rig timbers, three galvanized iron tanks, several sets of rig irons, shovels, picks, stoves and cooking utensils, bedding, and various implements used in connection with the business of drilling and mining for oil, and also a frame house (12x14), a derrick, one rig blown down, and five rigs in place. This property was scattered over a considerable area embracing two separate tracts of land, included within four sections in different townships and ranges in the Lost Hills District, also known as the Lost Hills Fields, of Kern County. The value of the attached property at the time of the seizure, according to the affidavits which were filed in the proceeding by the appellants and respondent, was estimated at $1,330 and $2,430, respectively. The sheriff took possession of the property upon receipt of the writ of attachment, and, without moving it from the land, placed keepers in charge, who remained for a period of 437 days, or until March 22, 1913. At the rate of $2.50 per day for each tract of land the total

charge for this item of cost amounts to $2,185. On April 29, 1913, all the property which had been attached was sold at public auction under a writ of execution, and the sum of $550 was realized. Meanwhile service of summons was made upon defendant E. A. Wiltsee, by publication, and his default entered on August 26, 1912. Although the case was then at issue, it was not tried until March 21, 1913. The following day judgment was rendered in favor of the plaintiff and respondent. The motion to tax the costs and strike out the items for keepers' charges was made by J. M. Danziger and J. M. Kent, the appellants herein, and rested in part "upon the grounds that said costs are exorbitant and excessive, and are not justified by the facts of the case, nor are they legitimate costs to be assessed against said defendants." The court denied the motion, and this appeal was taken.

1. The appellants' first contention is that the keepers' services were unnecessary, as all "this property that was seized was perishable property," and should have been sold by the sheriff immediately after the seizure. In support of this contention the appellants lay great stress upon the following definition of "perishable" from Anderson's Law Dictionary: "Subject to speedy and natural decay. But where, as in the case of a levy upon personalty, the time before a sale can be made is necessarily long, the term may embrace property liable to material depreciation in value from other causes than decay." (See, also, Black's Law Dictionary; *Witherspoon* v. *Cross*, 135 Cal. 96, [67 Pac. 18].) The appellants also quote Bouvier's Law Dictionary to the effect that perishable property means "goods which are lessened in value and become worse by being kept." But we do not think the mere fact that the property actually lessened in value and became worse by reason of having been kept is the criterion whether it should have been disposed of as perishable property. It is only where the property, because of its nature or inherent qualities, is liable to material depreciation in value from decay or other causes pending the termination of the litigation that section 547 of the Code of Civil Procedure authorizes its sale without an order of court. (See 6 Words and Phrases, p. 5303, and cases therein referred to.) In the case of *Witherspoon* v. *Cross*, 135 Cal. 96, [67 Pac. 18], it was contended that the sheriff was negligent in not having disposed of a stock of groceries, consisting principally of canned

goods, coffee, flour, and farinaceous goods as perishable property, but the court, after referring to definitions on the subject similar to the foregoing, remarked that in the case before them "the time was not necessarily long," and the sheriff could not have anticipated that the attached property would remain in his hands for nearly a year. The decision continues: "Had he immediately sold the whole stock as perishable, and the next day or the next week the action had been dismissed, or the attachment otherwise discharged, could it be doubted that the sheriff would be liable for the full value of the goods, and not merely for the proceeds of the sale?" The appellants endeavor to show, however, that the respondent unnecessarily delayed the service of the summons upon defendant Wiltsee; that, after having effected service, he neglected for over four months to move to set the cause for trial; that at least his attorney knew the congested condition of the court's calendar and the improbability of an early trial; and that therefore "by his own conduct the plaintiff has brought the case within the definition of 'perishable goods.'" But, in our opinion, the affidavits do not show that the respondent failed to exercise due diligence in proceeding with the case. Nor does it appear that he had any reason to expect the litigation would be unduly protracted, or that the keepers' charges would finally become disproportionate to the value of the attached property. It is to be noted, too, that after the case was at issue, which was on August 26, 1912, the appellants themselves were entitled to have the issue set for trial had they been anxious to bring the litigation to a close. (Code Civ. Proc., sec. 594.) It also appears from the affidavits of the parties that the attached property was not, in fact, materially lessened in value on account of the action of the elements or natural deterioration. Although the actual cause of the loss in value is not disclosed in the record, it is not unreasonable to suppose, as the respondent suggests, that the value of the property was affected by the failure to make profitable discoveries of oil in the vicinity. But the value of the land for development purposes is not the measure of the sheriff's duty within the purview of section 547. We think it follows that the property held under attachment was not perishable.

The remedy available to the appellants, had they actually desired to have the property sold before the termination of

the action, would have been to apply to the court for an order directing its sale. (Code Civ. Proc., sec. 548.) If it had been made to appear satisfactorily to the court that the interest of the parties would have been subserved by a sale thereof, it would have been its duty to make such an order without regard to the question whether or not the property was perishable. (*Henry Cowell etc. Co.* v. *Figel,* 27 Cal. App. 11, [148 Pac. 796]; *Witherspoon* v. *Cross,* 135 Cal. 96, [67 Pac. 18].)

2. The appellants contend, moreover, that the sheriff should at least have gathered the property together and safely stored it under lock and key at a nominal expense, rather than to leave it standing idle and exposed to the elements, and subject to the heavy and unnecessary expense of maintaining keepers. It is pointed out that the effect of the course pursued by the sheriff has been to impose upon them a great hardship. "In addition," they say, "to having their property sacrificed they are called upon to pay a sum almost four times in excess of its value and almost twice the amount sued for." But the sheriff had no discretion but to obey the writ commanding him to "attach and safely keep all the property." (Code Civ. Proc., sec. 540.) It is his duty to preserve such property at his peril. (6 C. J. 370, sec. 819.) Of course, "he should make the expense of keeping it as light as possible consistent with its safekeeping. . . . In keeping property under process, the same prudence and economy should be exercised as in the ordinary business affairs of life. No unnecessary expense should be incurred therein." (Harlow on Sheriffs and Constables, 3d ed., secs. 251, 252.) It is unfortunate that in this case the sheriff's charges greatly exceed the value of the attached property, but it must be presumed in favor of the judgment herein that the superior court found that they were "necessary expenses in keeping and preserving" the property (Pol. Code, secs. 4290, 4300b), and we perceive no reason for holding otherwise. Furthermore, the owner of the property could have avoided the expense by having the attachment released under bond, or by applying to the court for an order of sale, as we have already pointed out. It appears from the affidavits that at the time of the attachment an inspection was made by the respondent, and disinterested parties in his behalf, for the express purpose of obtaining an estimate of the cost of tearing down,

moving, and storing the property in one place so as to lessen the expense. These estimates ranged from twelve hundred and fifty dollars to fifteen hundred dollars. It also appears from the affidavits of the respondent and his attorney that the latter advised the former against the removal of the property as it was located on oil placer claims upon which assessment work was being performed.

3. The final point made by the appellants is that "the allowance for keepers' fees was not legal, because a large portion of the property attached was real property." It is contended that the frame house, derrick, and rigs were affixed to the soil and became a part of the realty. The appellants insist, therefore, that the property should have been attached by filing with the recorder copies of the writ, a description of the property, and notice of the attachment, and by leaving similar copies with an occupant of the place, if there was one; if not, then by posting the same in a conspicuous place on the property attached. (Code Civ. Proc., sec. 542, subd. 1.) It is asserted in their affidavits that the expense of moving the balance of the attached property would have amounted to only a few hundred dollars, and that consequently the sole legal course for the sheriff to have pursued was to place the personalty in storage and attach the fixtures as realty. But it clearly appears that, notwithstanding the property was more or less of a ponderous nature and physically annexed to the soil, it was to a large extent capable of being dismantled and carted away. As is said in *Nisbet* v. *Clio Min. Co.*, 2 Cal. App. 436, 444, [83 Pac. 1077, 1081] : "If a levy is made on immovable property, no keeper would ordinarily be necessary, but in our opinion when an attachment is levied on movable property, even though it be classed as fixtures, the sheriff must safely keep and preserve such property and is entitled to the necessary cost of doing so."

We think the facts and circumstances shown amply justified the court in denying the motion of the appellants. But inasmuch as an appeal from the judgment against J. M. Danziger and one from the order denying his motion for a new trial are now pending in the district court of appeal from the second district (L. A. 3785, 2d App. Dist. 2066), the enforcement of the judgment herein will stand subject to the outcome of the said appeals.

The order is affirmed.

Shaw, J., and Sloss, J., concurred.