[Civ. No. 81.    Third Appellate District.—December 13, 1905.]

# W. G. NISBET, Respondent, v. CLIO MINING COMPANY, Appellant.

ACTION AGAINST CORPORATION—MISTAKE IN NAME—AMENDMENT OF COMPLAINT.—In an action against a corporation, where it sufficiently appears upon the face of the complaint what corporation was intended to be sued and served with summons, a mistake in the name of the corporation may be corrected with like effect as a mistake in the name of an individual defendant, by an amendment of the complaint, with permission of the court.

ID.—APPEARANCE FOR MISNAMED AND CORRECTED CORPORATION—ADMISSION OF JURISDICTION.—Where, by mistake in suing a Maine corporation named "Clio Mining Company," which owned the Clio mine described in the complaint, and had its office at Boston, Massachusetts, it was misnamed the "Clio Mill and Mining Company," designated as a Maine corporation, and owner of tne Clio mines, and upon publication of summons, copies of the summons and complaint were sent to the correct office of the "Clio Mining Company," at Boston, Massachusetts, and a New Jersey corporation having no connection with the property involved, but bearing the miscalled name, appeared in the action and defended it, and upon correction of the name of the corporation sued, by striking out the words "and Milling" therefrom, the attorney for the defendant appeared also for the "Clio Mining Company" to oppose the correction, and maae several motions therein on its behalf, and the same company thereafter appeared by another attorney to vacate the order allowing an amendment to the complaint, and to quash service thereof, and to set aside the judgment and to retax costs, the jurisdiction of the court was admitted by the "Clio Mining Company," notwithstanding each appearance therefor was designated as "special."

ID.—SPECIAL APPEARANCE, WHEN GENERAL.—If a party appears and asks for any relief which could only be given to a party in a pending case, such as presenting amendment of pleadings, or striking papers from the files or granting relief from excessive costs, it is a general appearance, no matter how carefully or expressly it may state that the appearance is special.

ID.—COSTS—EXPENSE FOR KEEPING ATTACHED PROPERTY—MINE—TOOLS AND MACHINERY—FIXTURES.—Where it clearly appears that the mining property, tools and machinery of the defendant attached by the plaintiff included considerable portable property, though the machinery may be classed as fixtures, the expense of the defendant in caring for and preserving the property was a proper item of costs.

APPEALS from a judgment of the Superior Court of Tuolumne County, and from orders refusing to set the judgment aside, and refusing to retax costs.  G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Eugene S. Watson, and J. P. O'Brien, for Appellant.

F. P. Otis, for Respondent.

McLAUGHLIN J.—There are three appeals in this case: (1) From the judgment; (2) from an order refusing to set the judgment aside; (3) from an order refusing to retax the costs.  It appears that two companies, the Clio Mining Company, organized and existing under the laws of the state of Maine, and the Clio Mining and Milling Company, organized under the laws of the state of New Jersey, were in existence and had been doing business in Tuolumne county.  The former owned and was operating the Clio mine, while the latter had no connection with said mine.  When this action was commenced, an attachment was issued and levied on the Clio mine and tools and machinery thereon, and a keeper was placed in charge of the property.  In the original complaint the defendant was styled the "Clio Mining and Milling Company," and this error was also made in the summons. It was, however, distinctly alleged that the defendant corporation was organized under the laws of the state of Maine, and that it was engaged in mining at the Clio mine in Tuolumne county.  It is obvious that the description did not exactly fit either of the above-mentioned corporations.  Under an order for publication of summons, publication thereof was made, and a copy of the summons attached to a copy of the complaint was mailed to the Clio Mining and Milling Company at the last known residence of the defendant, which was 53 State street, Boston, Massachusetts.  Similar copies were also served upon the Secretary of State.  Within the time allowed by law, J. P. O'Brien, Esq., appeared for the defendant by filing a demurrer to the complaint.  This demurrer was overruled, and on May 6, 1904, an answer signed and verified by him as "Attorney for Defendant" was filed.  This answer contained specific denials of all averments of the

complaint, including the averments as to corporate organization and existence under the laws of Maine, and the operation of the Clio mine. Three days later the plaintiff, without leave of the court, filed an amended complaint, reciting that a mistake had been made in the name of the defendant corporation, and omitting the words "and Milling" wherever they appeared in said name. This amended complaint was served on the attorney for defendant, who five days thereafter gave two separate notices of motions to be made for and in behalf of the Clio Mining Company. One of these motions was to strike the amended complaint from the files, the other to quash the summons and service thereof, and the service of the amended complaint, as far as the Clio Mining Company was concerned. These notices recited that the Clio Mining Company appeared specially for the purpose of making the motions, and for no other purpose, and both were signed by Mr. O'Brien, as "Attorney for the Defendant." An affidavit signed by him accompanied the notices, and it is therein recited that he was the attorney for the Clio Mining and Milling Company, and also appeared as the attorney for the Clio Mining Company for the purpose of making the motions above mentioned. Thereupon the plaintiff gave notice of a motion for leave to amend the complaint by striking out the words "and Milling" wherever they appeared in the name of the defendant corporation, and served such notice upon Mr. O'Brien. This motion was supported by the affidavit of the attorney for plaintiff, reciting the mistake, and that the sole purpose of the amendment was to correct the same.

This last-mentioned motion came on for hearing at the same time the motions previously mentioned were heard, A. A. Smith, Esq., appearing for J. P. O'Brien, "Attorney for Defendant." The motion to strike the amended complaint from the files was granted on the ground that the same was filed without notice to defendant and without leave of the court. The motion for leave to file the second amended complaint was then argued by respective counsel and granted by the court, defendant reserving an exception. Notice of the time fixed for trial was served on the attorney for defendant and the Secretary of State, but the defendant was not represented at the trial. Judgment was duly entered in favor of plaintiff on July 5, 1904, and on the same day a memorandum

of costs was served on Mr. O'Brien, as attorney for the defendant. Four days later the Clio Mining Company, as defendant in the action, filed its notice of motion to retax the costs and strike certain items from the cost-bill. This notice recited that the defendant appeared for the purpose of making said motion, and not otherwise, and was signed by Eugene S. Watson, as "Attorney for said Defendant, for the Purpose of said Motion." On the hearing of this motion, all the papers on file in the action, certified copies of the articles of incorporation of the two corporations, and the certificate of the Secretary of State, that no corporation of either name organized under the laws of Maine had filed a designation of agent in his office, were considered. The plaintiff also testified that tools worth "several hundred dollars" were under attachment. Thereafter the Clio Mining Company gave notice of a motion to vacate the order permitting the plaintiff to file the amended complaint and to quash the service of the same, and also to vacate and set aside the judgment. This notice was signed by Mr. Watson, as attorney for the defendant, and contained a recital that said company appeared specially for the purpose of said motion. The motion was based on all the papers, proceedings and records on file in the case, including the articles of incorporation of the two companies, and on the affidavit of Mr. O'Brien. This affidavit recites that affiant was at all times the attorney for the Clio Mining and Milling Company; that the amendment was an attempt to commence a new action against the Clio Mining Company without service of summons; that the two corporations were separate and distinct; and that at the time of making the affidavit, and the service of the amended complaint, he was not the attorney for the Clio Mining Company. The affidavit concludes with a prayer that the relief sought by the motion be granted. It contains no recital that Mr. O'Brien was not the attorney for the last-mentioned corporation at other times than the two particular occasions mentioned. The plaintiff, on the hearing of the motion, introduced a letter from the secretary of the Clio Mining Company, mentioning the new Clio company, and showing that the office of the secretary was at 53 State street, Boston, Massachusetts. The motions last mentioned were denied by the

court, and the facts above recited form the basis of the various appeals.

The appellant makes the point that the court never acquired jurisdiction of the Clio Mining Company. In this connection it is insisted that the Clio Mining and Milling Company was the sole defendant prior to the amendment, and that service of summons was made upon that corporation. If this be correct, then certainly an amendment to the complaint could not operate to substitute the Clio Mining Company for the original defendant, and give the court jurisdiction of that corporation without service of summons in some manner authorized by law. But the contention that the Clio Mining *and Milling* Company was the original party defendant upon which summons was served rests entirely on the fact that the words italicized appeared in the name of the defendant as it appeared in the summons and original complaint. Every other fact and circumstance indicates an intention to sue and serve the Clio Mining Company. That corporation was organized under laws of Maine, while the other company was organized under the laws of New Jersey. The former owned, and was operating, the property attached, and the latter had no interest in or connection with that property. The causes of action set forth in the complaint were for labor performed and wood furnished at the Clio mine, and it clearly appears that the copy of summons, attached to a copy of the complaint, was mailed to the office of the secretary of the Clio Mining Company, mentioned in the affidavit and order for publication of summons as the last known place of residence of the defendant. These facts certainly do not sustain the premise upon which the argument of appellant is based. True the affidavits recite that the affiant appeared for the New Jersey corporation in filing the demurrer and answer, but their general tenor and the course pursued show that a service of papers on him as attorney for the defendant brought a quick response from the appellant corporation. In any event, the extent and purpose of his appearance must be gathered from the record rather than from affidavits. The notices of special appearance in behalf of appellant, in common with the answer, are signed "J. P. O'Brien, Attorney for Defendant," and the affidavits conclude with a prayer that the relief sought by appellant be granted. There is no pretense that copies of

summons or complaint were mailed to any office or residence of the Clio Mining and Milling Company, or that any of its officers or agents ever received such copies. The verified answer clearly demonstrates that the corporation was not misled, and certain it is that no person of ordinary intelligence could inspect the record without knowing which corporation was intended.

There was no necessity for any appearance by the Clio Mining and Milling Company. If such necessity seemed apparent at first blush, a mere inspection of the complaint or other papers would show that there was no occasion for an appearance even by plea in abatement, much less a plea to the merits. The questions arising by reason of the amendment must therefore be determined under rules which would obtain if the Clio Mining and Milling Company had not been injected into the controversy. A mistake in the name of a natural person may be corrected by amendment of a pleading (*Allison* v. *Thomas*, 72 Cal. 563, [1 Am. St. Rep. 89, 14 Pac. 309] ; *McDonald* v. *Swett*, 76 Cal. 259, [18 Pac 324]) ; and the misnomer of a corporation in a pleading has the same legal effect as the misnomer of an individual. (Morawetz on Corporations, secs. 354, 355.) ''The misnomer of a corporation in any written instrument does not invalidate the instrument if it can be reasonably ascertained from it what corporation is intended.'' (Civ. Code, sec. 357; *Underhill* v. *Santa Barbara etc. Co.,* 93 Cal. 314, [28 Pac. 1049] ; *Donohoe-Kelly Banking Co.* v. *Southern Pacific Co.,* 138 Cal. 192, [94 Am. St. Rep. 28, 71 Pac. 93] ; *People* v. *Sierra Buttes etc. Min. Co.,* 39 Cal. 514: Rudy's Beach on Corporations, 99, 99a, 1003.) The court may, in furtherance of justice, allow a party to amend any pleading by correcting a mistake in the name of a party. (Code Civ. Proc., 473.) In *Chattanooga etc. R. Co.* v. *Jackson,* 86 Ga. 676, [13 S. E. 109], the name of the corporate defendant contained the word ''Carrollton,'' instead of ''Columbus,'' and the plaintiff was permitted to amend by inserting the latter word. In *Johnson* v. *Central R. R. etc. Co.,* 74 Ga. 397, in a suit brought against the Central Railroad and Banking Company, the addition of the words ''of Georgia'' was sanctioned. In *Singer etc. Co.* v. *Greenleaf,* 100 Ala. 272, [14 South. 109], the defendant corporation was styled the ''Singer Sewing Machine Company,''

and the supreme court of Alabama approved the ruling permitting an amendment by inserting "Singer Manufacturing Company," saying: "There was not an entire change of party, but only a correction of part of a corporate name which had been misconceived. We do not think the change was calculated to mislead." And similar amendments were held proper in the following cases: Maher v. Interstate Switch Co., 58 Kan. 817, [51 Pac. 286]; Wilcox v. American Sav. Bank, 21 Colo. 348, [40 Pac. 881]; Anglo-American Packing & Provision Co. v. Turner Casing Co., 34 Kan. 340, [8 Pac. 405].

In the case at bar the complaint shows on its face that the defendant corporation was organized under the laws of Maine, and that the causes of action were against the appellant. The affidavit and order for publication of summons are ample to show that it was the Maine, and not the New Jersey, corporation that was meant. The right party was sued, and the only service of summons attempted was upon the Clio Mining Company. The only mistake was in the addition of the words "and Milling," and the fact that it was a mere mistake must have been apparent to every person making any examination of the record, however superficial or casual such examination might be. The mistake could not abridge the rights or privileges of the plaintiff, unless the New Jersey corporation was actually made a party and served with process. Under the circumstances disclosed by this record it would be sticking in the bark, and sacrificing substance for shadow, to lay down the technical rule that the plaintiff was stripped of the privilege or right to amend his pleading by the voluntary appearance of the Clio Mining and Milling Company in an action plainly brought against another corporation of a similar name, but different residence. But, aside from the foregoing considerations, there is another reason why the jurisdiction of the court must be upheld. We think the appellant confessed such jurisdiction by its appearance as a party to the action. "Courts, under the reformed system of procedure, look to the substance of things rather than to form, and to persons and things rather than mere names. This manner of treating things constitutes the life and spirit of the reformed system of procedure." (Anglo etc. Co. v. Turner Casing Co., 34 Kan. 340, [8 Pac. 404].) That system was

designed to enable courts of justice to brush aside technicali-
ties affecting no substantial right, and decide causes upon the
merits.    In the case at bar the body of the complaint clearly
indicated that the intention was to sue the Clio Mining Com-
pany and recover upon its debt, and parties appearing in that
action could not close their eyes to substantial facts, and rely
upon mere technical omissions in the caption or title of the
cause. (*Wise* v. *Williams,* 72 Cal. 547, [14 Pac. 204] ; *Spear* v.
*Ward,* 20 Cal. 676; *Lasar* v. *Johnson,* 125 Cal. 555, [58 Pac.
161] ; *Fruit etc. Co.* v. *Fresno etc. Co.* (C. C.), 94 Fed. 847.)
The answer was to the merits, and on its face discloses an
intimate knowledge of all the facts and circumstances show-
ing the mistake.    Immediately after it was filed the plaintiff
took steps to correct the error and served an amended com-
plaint on the attorney who had signed and verified the answer,
not as attorney for the Clio Mining and Milling Company,
but as attorney for defendant.    That attorney, evidently in
response to such service, appeared for the Clio Mining Com-
pany and made motions, not only to quash the summons and
service thereof, but also to quash service of the amended com-
plaint and strike the same from the files, still subscribing
himself ''Attorney for Defendant.''    When the motion for
leave to file the second amended complaint came on to be heard
on the heels of the order striking the first amended complaint
from the files, the same attorney, through his representative
at the other hearing, resisted the motion and noted an excep-
tion for the defendant.    When the Clio Mining Company so
appeared, it had full knowledge of the mistake and the facts
and circumstances connected with the case, for it must be
held to have had knowledge of facts known to its chosen at-
torney.    It certainly cannot be pretended that the attorney
who had appeared in its behalf changed his allegiance and
identity *eo instanti,* and appeared for the Clio Mining and
Milling Company in resisting a motion to amend clearly and
unquestionably favorable to that corporation.    This would
be repugnant to reason, and contrary to the presumptions
which aid the action of the trial court.    Nothing to the con-
trary appearing, it must be assumed that the motion to amend
was resisted on behalf of the Clio Mining Company, and this
appears to be in consonance with the facts.    This being true,
that corporation could not have the benefit of its resistance

and still escape the jurisdictional consequences if the motion was granted. After judgment, seemingly in response to a cost-bill served on Mr. O'Brien, the same corporation appeared as a party defendant to contest the accuracy of the bill of costs and later renewed its attack on the amended pleading and summons and moved to have the judgment set aside. True there was an endeavor to make each appearance special, but if a party appears and asks for any relief which could only be given to a party in a pending case, such as preventing amendment of pleadings, or striking papers from the files, or granting relief from excessive costs, "it is a general appearance no matter how carefully or expressly it may be stated that the appearance is special." (*In re Clarke*, 125 Cal. 392, [58 Pac. 22] ; *Security etc. Co.* v. *Boston Fruit Co.*, 126 Cal. 423, [58 Pac. 941, 59 Pac. 296].)

We have seen that the appearance for the purpose of making a motion to retax the costs and strike certain items from the cost-bill necessarily admitted that the court had jurisdiction, and hence the only point to be considered in that connection is the power of the court to allow keeper's fees for preserving the property under attachment. Waiving the point that the motion was not made by the attorney of record or an attorney substituted for him, we think that under the facts disclosed the allowance was proper. It clearly appears that property of considerable value under attachment was portable, and we think the expense of the sheriff in caring for and preserving this property was a proper item of cost. If a levy is made on immovable property, no keeper would ordinarily be necessary, but in our opinion when an attachment is levied on movable property, even though it be classed as fixtures, the sheriff must safely keep and preserve such property and is entitled to the necessary cost of doing so.

The judgment and orders are affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 8, 1906.