[L. A. No. 4913. Department Two.—July 28, 1919.]

## PAUL THOMPSON, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] PLEADING—ACTION AGAINST CORPORATION—MISNOMER OF CORPORATION—SERVICE OF PROCESS UPON TRUE DEFENDANT—JURISDICTION TO CORRECT MISTAKE.—In an action against a railroad corporation where the defendant was misnamed as "Southern Pacific Railroad Company" instead of "Southern Pacific Company" and the summons was served upon the agent of the latter company, which specially appeared in the action, the court having acquired jurisdiction of the person of the defendant, as well as the subject matter of the suit, possessed the power to correct the misnomer.

[2] MASTER AND SERVANT—ASSUMPTION OF RISK—OBVIOUS DANGERS.—It is the duty of a master to provide reasonably safe and suitable appliances with or upon which his employee is to work. As to those things and appliances which it becomes the master's duty to furnish, the servant has the right to assume that the master has done his duty and that the appliances are reasonably safe and secure, and it is not contributory negligence for an employee to neglect to investigate and examine the conditions as to the safety of the appliances. In such a case the employee is held only to have assumed the risk of a danger of which he had knowledge, or the risk of a danger which was so obvious that he must have known of it, or of one as to which he had been put upon inquiry by discovery or suggestion of danger and which by gross carelessness he has neglected to notice.

[3] Id.—Knowledge of Defects and Dangers—Instruction.—An instruction that knowledge by the employee of the defective or unsafe character or condition of any ways, appliances, or structures of his employer is not a bar to recovery for any injury caused thereby, unless it shall also appear from a preponderance of the evidence that such employee fully understood, comprehended, and appreciated the dangers incident to the use of such defective ways, appliances, or structures, and thereafter consented to use the same or continued in the use thereof, does not reverse the rule regarding "burden of proof" and lay upon defendant the duty of proving the state of plaintiff's mind and the extent of his understanding, since the instruction merely states a well-known rule that a servant is deemed to have assumed a risk when he knows not only the defects in the instrumentalities used by him, but the dangers and risks arising by reason of such defects.

[4] Negligence—Injury to Painter of Railroad Semaphore—Imminence of Danger—Question for Jury.—In an action against a railroad company for damages for personal injuries received while painting a semaphore from a ladder placed on top of a box-car standing on a "house track," since the plaintiff must have known that he would almost certainly be injured if a car should be sent down against the cars on such track, it was for the jury to determine whether or not he knew that there was any imminence of the use of the track for switching at the time in question and under the existing circumstances.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage and W. I. Gilbert for Appellant.

Chas. E. Barrett, Harry A. Hollzer, L. D. Collings and Jerome H. Kann for Respondent.

MELVIN, J.—Plaintiff was successful in a suit for damages on account of personal injuries. Defendant appeals from the judgment.

In the complaint filed November 10, 1910. against Southern Pacific Railroad Company, it was alleged that the defendant was "a corporation organized and doing business as a railroad company in the state of California, and under and pursuant to the laws of the state of California." On that day summons was issued and on November 1, 1911, an *alias* summons was given in said action. On December 29, 1911 a

copy of said *alias* summons, attached to a copy of the com
plaint, was served upon F. H. Reed at San Francisco. Mr
Reed at that time .was the duly authorized agent (upon whom
process might be served in the state of California) of South
ern Pacific Company, a corporation organized and existing
under and by virtue of the laws of the state of Kentucky
An answer to the complaint was filed on January 18, 1912, by
the Southern Pacific Railroad Company. On January 27
1912, Southern Pacific Company, appearing especially for the
purposes of the motion, gave notice of intention to move to
quash the *alias* summons served on Mr. Reed and to set aside
pretended service upon the grounds, among others, that said
summons had not been regularly issued and that said South-
ern Pacific Company was not a party to the action.

This motion was heard and denied on February 19, 1912.

On December 10, 1914, plaintiff served and filed his notice
of motion for leave to amend his complaint by striking out
the word "Railroad" wherever it appeared as a part of the
name of' defendant. The motion was made upon the .ground
that the true name of defendant was "Southern Pacific Com-
pany" instead of "Southern Pacific *Railroad* Company," and
on the further ground that Southern Pacific Company had
been properly served and had appeared in the action. On De-
cember 12, 1914, Southern Pacific Company served and filed
its notice of objections and answer to said motion to amend
plaintiff's complaint, pleading, among other things, that it was
organized under the laws of Kentucky and denying that it had
any corporate connection whatsoever with the Southern Pacific
Railroad Company. There was also an averment that plain-
tiff's alleged cause of action (which was based upon physical
injuries received on November 12, 1909) was barred by the
statute of limitations. This answer was accompanied by cer-
tain affidavits. One of these was made by D. P. Ewing. In
it he deposed that he was assistant secretary of Southern Pa-
cific Railroad Company, defendant in the action, which was
a corporation formed under the general laws of California,
Arizona and New Mexico, and that he was not an officer of
Southern Pacific Company, a Kentucky corporation. T. O. Ed-
wards deposed that he was assistant secretary of Southern Pa-
cific Company, a corporation created by the laws of Kentucky;
that said corporation had not been served with process and
that said Southern Pacific Company was a "different, sep-

arate, and distinct corporation from the above-named South-
ern Pacific Railroad Company, the defendant in the above-
entitled action.'' Plaintiff's motion for leave to amend was
heard, Southern Pacific Company appearing in opposition
thereto, and on December 16, 1914, leave to amend the com-
plaint was granted by the court. On December 18, 1914, the
amended complaint naming Southern Pacific Company, a cor-
poration (but without specifying its principal place of busi-
ness), as the defendant, was filed.

On December 28, 1914, Southern Pacific Company, still re-
serving its special appearance theretofore made in opposition
to the motion for leave to amend the complaint, filed its an-
swer, in which objection was still made to the jurisdiction of
the court.

The cause was thereafter tried and a verdict was rendered
which was set aside. Upon the calling of the case for trial the
second time, Southern Pacific Company made formal objection
to the introduction of testimony upon the grounds that, upon
the face of the record it appeared that within one year after
the accident Southern Pacific *Railroad* Company had been
sued and had duly answered; and that after five years follow-
ing the accident the Southern Pacific Company, a Kentucky
corporation, had been brought into the case by the expedient
of amending the complaint, the said amendment having been
made ''without process ever having been served upon the
Southern Pacific Company.''

Respondent insists that there is no record to support the
history of the controversy over the pleadings and that as all
intendments are in favor of the correctness of the orders of
the superior court, they must stand. It appears that the two
orders attacked by appellant were made each by a different
judge. Another judge, the Honorable Louis W. Myers, who
presided at the second trial of the cause, authenticated the
entire record sought to be here used. As the two judges who
presided at the hearings of appellant's motions were on the
superior bench when the appeal was taken and the record pre-
pared, respondent insists that no bill of exceptions embodying
the supposed proceedings before them should be recognized and
used by this court unless each authenticated that part of it
relating to the motion which he heard. In support of this
position they cite such authorities as *Cummings* v. *Conlan,* 66
Cal. 403, [5 Pac. 796, 903], *Turner* v. *Hearst,* 115 Cal. 394, [47
Pac. 129], *Muzzy* v. *McEwen Lumber Co.,* 154 Cal. 685, [98

Pac. 1062], and *Waymire* v. *California Trona Co.*, 176 Cal. 395, [168 Pac. 563].

It is unnecessary to decide at this time the interesting question raised by respondent, because, assuming that the record is properly authenticated, it fully supports the orders attacked by appellant. The case upon which appellant relies principally for support of its assertion that it was brought into court without service of process is *Altpeter* v. *Postal Telegraph-Cable Co.*, 26 Cal. App. 705, [148 Pac. 241]. There is, however, a wide and essential difference between that case and the one at bar. In that case *no* representative of the corporation against which plaintiff had a cause of action was ever served with summons. In this case the real defendant's agent received the summons and knew the contents of the complaint because the corporation appeared specially in the action. [1] True, there was a misnomer of the party defendant in the pleading, but the court having acquired jurisdiction of the person of the defendant, as well as the subject matter of the suit, possessed the power to correct the misnomer. This case on the point under discussion is essentially identical with and is ruled by *Nisbet* v. *Clio Mining Co.*, 2 Cal. App. 436, [83 Pac. 1077]. Commenting upon that authority in the case of *Reclamation District etc.* v. *Diepenbrock*, 168 Cal. 577, [143 Pac. 763], this court used the following language: "In *Nisbet* v. *Clio Mining Co.*, 2 Cal. App. 441, [83 Pac. 1077], the authorities are discussed and the rule approved which sanctions an amendment to correct a mistake in pleading the corporate name of a party to an action. With the conclusions reached by the district court of appeal in that case we fully agree and we find no error in the action of the court in the case before us permitting the amendment."

The record reveals the following facts: Plaintiff, who was a painter, had been employed by defendant for a period of about three months before the occurrence of the injury to him. He was sent out to paint a semaphore near a station. He had never before been required to paint an entire semaphore. Opposite the station, not on a main track, but on a "house track" stood a box-car which was also near the semaphore. After painting a part of the semaphore from the ladder attached to the semaphore pole and being unable, as he testified, to reach the other part of the semaphore from this ladder, plaintiff, with the assistance of another employee of defendant from

whom he had formerly taken orders, procured from the platform a ladder which was placed on top of the box-car with the upper end against the semaphore pole. From this ladder the plaintiff continued his work. Both the towerman (who signaled all trains and adjusted switches) and the station agent · knew that plaintiff was then at work. While he was so engaged one of defendant's freight trains came in on the main track and stopped. Plaintiff was in plain view of the train crew, yet a car was uncoupled from the freight train and sent down the "house track" against a line of cars upon one of which rested the ladder on which plaintiff stood. As a result plaintiff was hurled to the ground and seriously hurt.

Defendant attacks some of the instructions, among others the following: "It is the duty of the master to provide reasonably safe and suitable appliances with or upon which his employee is to work; as to those things and appliances which it becomes the master's duty to furnish, the servant, or employee, has the right to assume that the master has done his duty and that the appliances are reasonably safe and secure, and it is not contributory negligence for an employee to neglect to investigate and examine the conditions as to the safety of the appliances. In such a case the employee is held only to have assumed the risk of a danger of which he had knowledge, or the risk of a danger which was so obvious that he must have known of it, or of one as to which he had been put upon inquiry by discovery or suggestion of danger and which by gross carelessness he has neglected to take notice of." [2] The last sentence of the instruction comes particularly under defendant's condemnation as being .too great a limitation upon the doctrine of assumption of risk. Virtually the same language will be found in the opinion in *Silveira* v. *Iversen,* 128 Cal. 187–192, [60 Pac. 687].

Another instruction was as follows: "Knowledge by the employee of the defective or unsafe character or condition of any ways, appliances, or structures of his employer is not a bar to recovery for any injury caused thereby, unless it shall also appear from a preponderance of the evidence that such employee fully understood, comprehended, and appreciated the dangers incident to the use of such defective ways, appliances, or structures, and thereafter consented to use the same or continued in the use thereof." It is asserted that this instruction entirely reverses the rule regarding "burden of

proof'' and lays upon defendant the duty of proving the
state of plaintiff's mind and the extent of his understanding.
[3]   The criticism is not well taken.   The instruction merely
states a well-known rule that a servant is deemed to have as-
sumed a risk when he knows not only the defects in the instru-
mentalities used by him, but the dangers and risks arising by
reason of such defects.   (*Nofsinger* v. *Goldman*, 122 Cal. 609–
618, [55 Pac. 425]; *Pigeon* v. *Fuller*, 156 Cal. 691, [105 Pac.
976].   [4]   In this case plaintiff must have known that he
would almost certainly be injured if a car should be sent down
against the cars on the ''house track.''   But it was for the
jury to determine whether or not he knew that there was any
imminence of the use of that track for switching at that time
and under the existing circumstances.

Two other instructions offered by defendant were given with
modifications based upon the principles discussed above.   The
court committed no error in making the changes to which de-
fendant objects.   The charge to the jury was full and fair.

Defendant's motion for nonsuit was properly denied.

The judgment is affirmed.

Wilbur, J., and Lennon, J., concurred.