[Civ. No. 5196.   Third Appellate District.—October 25, 1934.]

DORSOLINA M. HAVERSTICK et al., Executrices, etc., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Levinsky & Jones and Tom B. Quinn for Appellant.

Snyder & Snyder for Respondents.

PLUMMER, J.—Franklin Allen, now deceased, the plaintiff, had judgment against the defendant in this action, for and on account of the destruction of property and personal injuries alleged to have been suffered on account of a fire negligently allowed to escape from a car belonging to the defendant.

The facts disclosed by the record show that on or about the nineteenth day of May, 1931, the defendant was operating what is called the shuttle train between Ione, in Amador County, and Galt, in Sacramento County. This train makes one trip each way, daily. The route traversed is across

rolling valleys and foothills. The train, on the particular day, consisted of an engine, 18 cars, and a combination passenger car and baggage coach operated by a crew of five men, to wit: engineer, fireman, conductor, brakeman and express messenger. The combination car is divided one portion being used for passengers, the other portion for baggage and express matter.

During the springtime high winds prevail over the section of the country traversed by the railroad, and the testimony is to the effect that on the nineteenth day of May, 1931, a wind was blowing from north to south, and moving at a rate of from 65 to 70 miles per hour. When the train had reached a point about a mile and a half from Carbondale, the discovery was made that the combination coach was on fire. The train stopped; a fire extinguisher was taken from the combination coach and used by the brakeman in an attempt to extinguish the fire from below. It appears that the fire was burning in the space between the lower and upper floors of the combination coach, the lower part of the sills of the coach being lined with tongue-and-groove lumber; the upper part, or inside floor of the coach was lined with a double covering of tongue-and-groove lumber. The intervening space between the two floors, or rather, between the tongue-and-groove lumber on the lower side of the sills and the lumber constituting the floor of the coach, giving a space of about six inches, was filled with sawdust and other material, for the purpose of deadening the noise. It was this material that was discovered to be on fire.

In the use of the fire extinguisher it appears that the force exercised by the liquid contained in the extinguisher was such that it scattered the burning embers in all directions. These burning embers were caught up by the high wind prevailing at the time and place mentioned, carried beyond the right of way of the company, and ignited a grass field adjoining the company's right of way. It was the spreading of this fire that caused the damage to the plaintiff's property, and also resulted in his personal injuries while attempting to save property belonging to him, imperiled by the fire thus started.

The record shows that the grass fields were very dry, and the fire spread with exceeding rapidity, and soon got beyond the control of the train crew, only one of whom, the

conductor, it appears attempted to extinguish the fire after it had been so started in the grass adjoining the defendant's right of way. His testimony is that he made a rush for the fire but was unable to extinguish it. Efforts were made by the train crew, by means of taking the drinking tanks of the combination car, cutting a hole in the floor and pouring the contents thereof upon the burning sawdust. While the fire was not extinguished, it appears to have been partly subdued, and the train then moved on to Carbondale, the burning car was stopped alongside of a water car and the fire extinguished, after which the train moved on to Ione some miles distant. After reaching Carbondale the conductor notified a section crew, and it appears that this crew went back and attempted to extinguish the flames.

The record shows that in the beginning of the action there was a misnomer of the defendant, the defendant appeared specially and moved to quash the service of summons. In the meantime the plaintiff moved the court to amend his pleadings by inserting the true name of the defendant, after which an *alias* summons, giving the true name of the defendant, together with a copy of the amended complaint, setting forth the true name of the defendant, was served upon the proper officer designated by the appellant as the person upon whom service of summons might be made.

The motion to quash being denied, the defendant filed a demurrer, and also an answer to the plaintiff's amended complaint. These pleadings made no pretense of attempting to preserve the right to further object to the jurisdiction of the court on account of any defect in the summons.

Upon this appeal four propositions are presented for consideration:

I. Did the court err in denying appellant's motion for nonsuit?

II. Is the verdict supported by the evidence?

III. Did the court err in denying appellant's motion to quash summons and service thereof?

IV. Did the court err in trebling the damages?

█ While both the appellant and the respondents have argued at length the alleged error of the court in denying appellant's motion to quash the summons, a slight examination of the authorities reveals that the question tendered for consideration has been definitely decided in favor of the

correctness of the ruling of the court for a great many years.

Section 473 of the Code of Civil Procedure, being but a reenactment of the Practice Act as amended by Statutes of 1865–66, page 843, provides, and it has ever since provided, that "The court may, in furtherance of justice, and on such terms as may be proper, amend any pleading or proceeding by adding, or striking out the name of any party, or by correcting a mistake in the name of a party, etc."

Again, beginning with cases as early as *Suydam* v. *Pitcher,* 4 Cal. 280, it has been held that where a party appears specially, moves the court to quash the service of summons, and upon the denial of such motion, thereafter appears by demurrer or answer, all objections to the defect in the summons are thereby waived.

That the court had authority in this case to permit the amendment of the complaint to correctly state the name of the defendant, is definitely settled by the opinion in the case of *Thompson* v. *Southern Pac. Co.,* 180 Cal. 730 [183 Pac. 153].

That a general appearance by filing an answer after denial of motion to quash a summons waives all defects therein, is likewise settled beyond controversy in this state by the opinion of the Supreme Court in *Remsberg* v. *Hackney Mfg. Co.,* 174 Cal. 799 [164 Pac. 792], and the cases there cited.

In the light of the authorities just cited, it must be held that the court did not err in denying the appellant's motion to quash summons, and even if the court did err in so doing, it at once became a moot question and immaterial immediately upon the filing of a demurrer and answer by the appellant, which, under the authorities, gave the court jurisdiction of the cause, and also over the defendant.

Propositions I and II as to whether the court erred in denying appellant's motion for nonsuit, and whether the verdict is supported by the evidence, may properly be considered together.

As we have stated, the burning embers scattered by the force of the fire extinguisher at a time when the wind was blowing at the rate of from 65 to 70 miles an hour, caused the fire to be set in the dry grass alongside the railroad right of way. The wind was blowing from the north to the

south. The premises set on fire were to the south of the railroad. No real explanation is given as to how the fire started, although it does appear that some eight days previously the coach in question was pulled either through or alongside of a fire burning grass on the defendant's right of way. That is the only explanation which appears in the record from which it was concluded that the fire was burning or smoldering in the sawdust until it gathered sufficient headway, on this particular windy day, to break out and become visible to the defendant's employees.

While the appellant sets out at considerable length all the testimony concerning the equipment of the car, the number of years it had been in use, the fact that not a great while previous to the nineteenth day of May, 1931, the car had been overhauled and inspected, and that the company had taken the precautions of burning the grass along its right of way, there were certain facts submitted to the jury upon which we think the jury had a right to base its verdict fixing the liability of the appellant, to wit, whether the employees of the company used ordinary care and diligence in the attempted extinguishment of the fire to prevent its spread or to prevent the spread of the embers from coming in contact with the dry grass adjoining the right of way, and which, being ignited, communicated with and destroyed property belonging to the appellant and resulted in his bodily injury, in an attempt which the record shows proved successful in preventing the destruction of property of some thousands of dollars in value. It was for the jury to say, in view of the fact that such a high wind, amounting to a gale, was prevailing at the time, whether a reasonable man, when he saw the embers beginning to scatter, would have immediately ceased his efforts in that direction and sought means of extinguishing the fire through the upper floor of the car. As to whether, under the conditions, the employee of the company was negligent in continuing to scatter the burning embers, under the conditions prevailing, until the grass fire was started, as we have said, was a question for the jury to determine.

The record further shows that only one man of the crew of five attempted to put out the grass fire, and he not succeeding, the train was moved on a mile and a half to a water car, where the fire in the car was extinguished, after which

the train moved on some miles to Ione. After reaching Carbondale, the testimony of the conductor is that he notified a section crew, and the testimony of the foreman of the section crew is that he and his gang went down to where the fire was burning and attempted to extinguish the flames. A number of men thereafter joined and attempted to extinguish the flames, and after it had burned over a considerable territory, the testimony shows that it was finally extinguished. The departure of the train crew from the scene of the fire without making any substantial effort to subdue the flames, the taking of the train to a station approximately a mile and a half away, and the sending back of a section crew to fight the fire, present, also, a question of fact for the jury as to whether the train crew was negligent in going away and leaving the plaintiff's property to the mercy of the flames. That it was a matter of economy on the part of the train crew to make sure of the safety of the train, does not, and did not do away with the obligation dependent upon the crew to make every reasonable effort to extinguish the conflagration.

The facts which we have stated as gleaned from the record, we think clearly establishes that the court did not err in denying the appellant's motion for a nonsuit, and also that the verdict as to the negligence of the appellant's servants and employees, is sufficiently supported.

█ The jury brought in a verdict of $400 actual damages, and damages in the sum of $600 on account of personal injuries suffered by Franklin Allen, the then plaintiff in this action. The total damages of $1,000 were thereafter trebled by the order of the court. That Franklin Allen suffered damages to his property in the sum of $400, and personal injuries, as found by the jury, is not questioned, the contention being that damages for personal injuries are not allowable under the conditions here presented on the theory that one who is injured in attempting to save his property from a fire, though negligently started by another, cannot recover for such injuries. It being contended that the negligent starting of the fire is not the proximate cause of the injury. In making this contention the appellant calls our attention to a number of cases dealing only with the destruction of property, and not having before them the question of injuries to the owner of the property, suffered in

an attempt to avoid its destruction by the fire. What the court may have said in those cases must be confined to the circumstances presented by the record in each case. If only the destruction of property was involved, then necessarily such cases are authority only for the law relating to the destruction of property.

That the statute allowing damages against one who negligently sets fire, or negligently allows it to escape, may have primarily been passed to guard against the destruction of property, yet if the language of the statute is sufficiently broad to include injuries to person, it lays the basis for compensable damages. It may be stated here that no contention is made that Franklin Allen was negligent in exposing himself to the flames which periled his property, or that he did not act in a manner other than as a carefully prudent person would have acted under like circumstances and conditions in order to avoid further damages to his property. We do not need to cite authorities to the effect that where one's property is in danger of being destroyed for and on account of a negligent cause instituted by another, the law requires the owner of the property to take all reasonable precautions to minimize the damages by lessening the destruction of his property.

There are some decisions which hold that an action for damages on account of personal injuries cannot be maintained, but so far as we have been able to examine such cases, they seem to more or less involve, also, the question of whether the person injured was not guilty of contributory negligence. As we have said, no issue of that kind is tendered in this action. In 51 C. J., page 171, we find the following: "There is a difference of opinion as to whether the negligence of a company in setting fire to property is the proximate cause of personal injuries to the owner who is burned while making an attempt to extinguish the fire and save his property. According to one line of decisions, the act of the owner in attempting to save the property, and not the negligence of the company in setting out the fire, is the proximate cause of the injury, and this is so whether or not the owner of the property is, himself, guilty of negligence. Other decisions, with perhaps better reason, hold that the negligent act of the company in setting out the fire, and not the act of the owner in attempting to save

his property, is the proximate cause of the injury, and that he may recover therefor, unless he was guilty of contributory negligence.'' We agree with the text-writer that the better reasoning supports the holding that the negligence of the company or person setting the fire is the proximate cause of the injury in the abesnce of a showing of contributory negligence on the part of the injured person.

While a number of cases might be cited supporting the holding that personal injuries suffered under conditions as presented here gives right to a cause of action for damages, one case only needs to be cited, to wit: *Illinois Central R. Co.* v. *Siler*, 229 Ill. 390 [82 N. E. 362, 11 Ann. Cas. 368, 15 L. R. A. (N. S.) 819]. The reasoning contained in the opinion is so convincing that we quote therefrom at length as follows: ''What is the proximate cause of an injury is ordinarily a question of fact, to be determined by the jury from a consideration of all the attending circumstances. (*Fent* v. *Toledo, P. & W. R. Co.*, 59 Ill. 349 [14 Am. Rep. 13]; *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242 [18 L. R. A. 215, 32 N. E. 285]; *West Chicago Street R. Co.* v. *Feldstein*, 169 Ill. 139 [48 N. E. 193].) It can only arise as a question of law or pleading when the facts are not only undisputed, but are also such that there can be no difference, in the judgment of reasonable men, as to the inferences to be drawn from them. The counts all allege, substantially, that the fire was communicated to the decedent's premises by the negligence of appellant. They all allege, substantially, that, while the deceased, with all due care for her safety, was trying to extinguish the fire, her clothing was ignited and her burning and death resulted. The question presented, so far as the demurrer is concerned, is whether one who has negligently set fire to another's premises can be held liable for damages caused by burning the owner while engaged in trying, with reasonable prudence and care, to extinguish such fire. Even though one's property has been negligently set on fire by another, the owner cannot permit it to be consumed without an effort to save it and then claim reimbursement from the setter out of the fire. He must use every reasonable effort consistent with his personal safety to preserve the property. (*Toledo, P. & W. R. Co.* v. *Pindar*, 53 Ill. 447 [5 Am. Rep. 57]; *Chicago & A. R. Co.* v. *Pennell*, 94 Ill. 448.) Where a person sees his

property exposed to imminent danger through the negligence of another, he is justified in using every effort to save it which a reasonably prudent person would use under similar circumstances, even though the effort exposes him to some danger which he would otherwise have avoided. Due care depends upon the circumstances surrounding the action. It is to be determined with reference to the situation in which he finds himself at the time. What is due care in one situation might be gross recklessness under different circumstances. Everyone is bound to anticipate the results naturally following from his acts. The appellant was therefore bound to anticipate, when the fire started, that the decedent would try to put it out. . . . In order to make a negligent act the proximate cause of an injury, it is not necessary that the particular injury and the particular manner of its occurrence could reasonably have been foreseen. (*City of Dixon* v. *Scott*, 181 Ill. 116 [54 N. E. 897].) If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence.''

It is further shown in the case that the particular injuries suffered might not have been anticipated and need not to have been anticipated in order to render the one guilty of the negligent act liable. . In the Siler case a woman attempted to put out a fire to save her property, and in so doing it appears that her clothing caught fire and she was so severely burned that death ensued. The authorities supporting the holding of the court in the Siler case are so numerous in the opinion that for the sake of brevity we can only cite the case without further quotation therefrom. We may also refer to the case of *Wilson* v. *Northern Pac. Ry. Co.*, 30 N. D. 456 [153 N. W. 429, L. R. A. 1915E, 991], where the cases allowing recovery for personal injuries are set forth at great length, and the rule allowing damages therefor upheld.

In some of the states the statutes having to do with the setting of fires read differently from the sections of the code as they read at the time of this action. We note that the appellant states that section 3344 of the Political Code

and section 3346(a) of the Civil Code, were in force, as hereinafter stated, at the time of this action, but that said sections are now repealed. We may state, however, that the question of whether the two sections are repealed is involved in considerable doubt. By reference to the Statutes of 1931, page 1644, it will be observed that no mention of repealing either one of the sections is mentioned in the title of the act, which apparently brings in conflict the attempted repeal with section 24 of article IV of the Constitution. In some of the states, also, the subject of wilfulness is inserted. Nothing of that kind appears in either one of the code sections, which read as follows:

Political Code, section 3344. "Every person negligently setting fire to his own woods, or negligently suffering any fire to extend beyond his own land, is liable in treble damages to the party injured."

Civil Code, section 3346a. "Every person negligently setting fire to his own woods, or negligently suffering any fire to extend beyond his own land, is liable in treble damages to the party injured."

By neither of these sections is the loss or damage suffered on account of the negligent act of another in starting a fire, or suffering it to spread over adjoining premises, limited to property loss. Both sections read "damages to the party injured", excluding the idea of confining the protective provisions of the sections simply to property as against person. That property is in a sense not readily movable, and therefore more subject to fire hazards than person, affords no logical reason for drawing a distinction between the two classes of injuries, or limiting one's right to recover for only his property loss, when the real injuries inflicted may have been of a personal character. In the instant case we do not overlook the fact that Franklin Allen might have escaped personal injury by leaving his property to the mercy of the flames; on the other hand we are mindful of the law which specifies that even though one's property is endangered by the negligent act of another, it is the duty of the person whose property is endangered to take all reasonable measures to minimize the loss. Thus, if the owner of the 600-odd head of sheep in the instant case had abandoned them to the mercy of the flames, and instituted suit to recover for their loss, the

appellant very properly could have interposed the objection that the owner should have lent his best efforts to subdue the fire and saved the lives of his sheep. We cannot subscribe to the doctrine that an injury incurred in the performance of one's duty, which duty is necessitated and enforced by the negligent act of another, is the proximate cause of an injury suffered, and not the negligent act which necessitated and enforced the performance of that duty.

As we read the case of *Clark* v. *San Francisco & S. J. V. Ry. Co.*, 142 Cal. 614 [76 Pac. 507], relied upon by the appellant in support of its contention that the sections of the codes, *supra*, do not apply, we are forced to the conclusion that the facts in that case are so dissimilar to those presented here as to render it uncontrolling. The facts in that case were that a flaming box on one of the cars ignited grass along the highway, causing the damage to the plaintiff. All that is said in the opinion relative to the sections of the codes under consideration is as follows: "The evidence was not sufficient to show a case falling within the provisions of section 3344 of the Political Code, a section which is penal in its nature and which must be strictly construed. Under the evidence the defendant was liable only for the actual damage." No personal element of negligence is shown to have entered into the Clark case; no act of any individual employee of the company is shown to have started the conflagration. There is no showing in the record in that case, so far as can be ascertained from the printed opinion, that the train crew left the immediate scene of the fire without making any substantial effort to subdue the flames, took the train to a point approximately a mile and a half away, and sent back a section crew to fight the fire, mindful of the fact that a wind, admitted to be blowing at the rate of 65 to 70 miles an hour, would spread the conflagration with great rapidity. The facts of each case must be first considered before the limited language contained in any opinion of the court can be held controlling, and where the facts are different, a different application must be made of the protective principles enunciated in the sections of the codes, *supra*.

In the case of *Belk* v. *Stewart*, 160 Mo. App. 706 [142 S. W. 485], one of the cases principally relied upon by

the appellant, it is evident that no thought of personal injury was in the mind of the court. That case deals only with double damages wilfully inflicted or wilfully caused to property by the setting out and escape of fire. We have no complaint with anything stated in that case, but we fail to perceive its applicability.

In *Kennedy* v. *Minarets & Western Ry. Co.*, 90 Cal. App. 563 [266 Pac. 353], from the opinion of which the appellant has quoted extensively, this court went into the subject of property damages occasioned by the negligent suffering of the escape of fire, resulting in much loss and damage, a case where the employees of the respondent departed and left a smoldering fire somewhat similar to the instant case, where the employees of the company departed from the premises where the fire had been started. Again, there is nothing in the Kennedy case which indicates that the court had in mind a limitation of the right of recovery under the sections of the codes, to mere property damages. It is true that in the Kennedy case, and in most of the cases having to do with fires where property damage has resulted, especially in dry countries like California, the court has stressed the added peril from either the negligent setting of fires, or the negligent suffering of their spreading to adjoining premises, but in none of the cases, so far as we have been able to examine them, has there been any intimation that the words "party injured" meant only the owner of property. The mere circumstance that a given state of facts has been held to bring a case within the protective provisions of the two code sections, *supra,* present no legal reason why relief should be denied in an instance where a different state of facts exist, coming equally within the language of the sections, simply because the great majority of cases have to do with the destruction of property rather than with injury to persons. The rights to property and to protection against its destruction are certainly no greater than the right to personal security, and a "party injured" is no less a "party injured" because his body has been impaired, instead of a piece of property owned by him has been destroyed.

We do not find any reason whatever in any of the cases placing property protection upon a higher plane than personal security. Just as stated in Corpus Juris, *supra,* better

reasoning applies the protective principle of the law to preserve both person and property.

Primarily, the trebling of damages is always for the trial court.

We find no reason for disturbing the action of the court in this case.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 24, 1934.