[Civ. No. 16850. First Dist., Div. One. Oct. 10, 1956.]

CLARK HENDERSON, Respondent, v. GEORGE HARRY BALCOM, Appellant.

Crist, Peters & Donegan and Arthur L. Damon, Jr., for Appellant.

Morton L. Silvers and Philander B. Beadle for Respondent.

BRAY, J.—The sole question presented upon this appeal by defendant Balcom alone, from an order granting new trial as to all defendants after a jury verdict in favor of all defendants, is whether there was any substantial evidence that would have supported a verdict in favor of plaintiff against defendant Balcom.*

### EVIDENCE

The accident, for injuries incurred in which plaintiff brought this action, occurred February 1, 1952, at about 8 p.m. on El Camino highway. The street was wet, but at the time of the accident it was either raining very lightly or not at all. The general area was fairly well lighted by neon lights from stores along the street. All cars had their headlights on. Defendant Balcom was driving southerly on the highway, according to his testimony. Desiring to look at a display in a boat shop, he drove westerly off the highway

*It is well settled that the granting of a new trial is largely within the discretion of the trial judge, will be reversed only if an abuse of discretion clearly appears, and the test is whether there was no substantial evidence which would support a contrary verdict. (*Deshotel* v. *Atchison, T. & S. F. Ry. Co.*, 126 Cal.App.2d 303, 305 [272 P.2d 71]; *Moss* v. *Stubbs*, 111 Cal.App. 359, 362 [295 P. 572, 296 P. 86].)

and parked in front of the shop. Shortly thereafter he drove south on the parking area approximately 200 feet, turned his car east towards the highway, and stopped. He intended to enter upon the highway and travel back in a northerly direction. At this point directly opposite him, Curtner Street entered the east side of El Camino but did not cross. There were no traffic lights. Balcom observed that the nearest approaching traffic on the highway was about 1,000 feet. He was unable to form an opinion as to the speed of any of the cars. He crossed the two southbound lanes and proceeded north in the lane closest to the center line. As he entered the highway he was probably talking to the passenger on his right. His speed was 15-25 miles per hour. As he made the left turn he observed the traffic again and the nearest approaching cars were 600-900 feet away.

Plaintiff's testimony was that, driving southerly on the inside lane of the highway at about 25 miles per hour, he noticed two cars, both of which were approaching him on the northerly inside lane. Balcom's car was about 300 feet from him and about three car lengths ahead of the car driven by defendant Mathews.

Mathews testified that driving northerly 30-35 miles per hour he saw Balcom's car starting to cross the southbound lanes. He was then about 150 feet south of Balcom. Mathews honked his horn thinking Balcom would stop as Mathews was so close to him; but Balcom continued across. When Balcom entered the inside lane going north he was 30-50 feet in front of Mathews. Mathews did not slow down but swerved to the outside northerly lane to avoid hitting Balcom. In this lane there was a car just ahead of him. To avoid hitting it Mathews applied his brakes. He was then either abreast or a little ahead of Balcom's car. The application of his brakes, which apparently caused one of them to ''grab,'' caused Mathews' car to skid in a northerly direction across the highway, into the inside southbound lane where it collided with plaintiff's car. Plaintiff sued both Balcom and Mathews and a Mrs. Taylor (who signed Mathews' application for a 'driver's license).

BALCOM AS A PROXIMATE CAUSE OF THE ACCIDENT

 Having in mind that the trial court in considering a motion for new trial is not bound by the rule of conflicting evidence, may draw inferences opposed to those accepted by the jury, and does not abuse its discretion by granting a new trial if there is any substantial evidence or reasonable infer-

ences therefrom which would support a verdict in favor of the party granted the new trial (see *Ballard* v. *Pacific Greyhound Lines* (1946), 28 Cal.2d 357, 358-359 [170 P.2d 465]), we fail to find any abuse of discretion here. According to the testimony of plaintiff and of Mathews, Balcom crossed the main highway and turned into the lane then occupied by the Mathews car and another so closely in front of those cars as to constitute a menace to the Mathews car at least.

Balcom contends that this negligence was responsible for no more than causing Mathews to turn into the outside northerly lane, and that Balcom's negligence was not a proximate cause of what happened thereafter. Balcom contends that Mathews' later acts and the "grabbing" of his brakes were unforeseeable intervening acts which eliminated Balcom's actions as a proximate cause of the accident. It requires no argument to state that it is reasonably foreseeable that if it becomes necessary to suddenly apply brakes on a wet highway while turning, skidding may result, and that therefore, as here, when the operator of a car turns in front of a car approaching on a highway at such a close distance as to require the latter to attempt to get out of his way and turn into an adjoining lane in which there is a car, a proximate result of the first operator's action would be any skidding which might result from the second operator applying brakes on the wet highway. But, says Balcom, the skidding here was not due to the wet surface, but to mechanical failure. This contention is based upon two bits of evidence: (1) Mathews' answer to the following question: "Q. Did you have any feeling of your brakes—of brakes grabbing when you applied them? A. Evidently one of them had grabbed because it caused me to skid." (2) California Highway Patrol Officer Bruwer testified that he examined the brakes of Mathews' car and found "Brake pedal did not meet the main resistance until approximately one inch from the floor, then resistance slight." This evidence is not sufficient to require a holding as a matter of law that the skidding was due to a mechanical failure and not due to the sudden application of brakes on a wet surface.

Based upon measurements from locations placed by Mathews on a map, Balcom contends that Mathews traveled approximately 160 feet in the outside lane after passing his car, and that such fact demonstrates as a matter of law that the chain of events started by Balcom was broken. In

spite of these measurements, Mathews testified that the total distance he traveled in the outside lane, including a 20-30 foot skid, was approximately 75 feet. It was for the trial judge to determine the distance traveled by Mathews before applying his brakes and whether such distance broke the chain of events set in motion by Balcom. We cannot say as a matter of law that, under all the circumstances here, even 160 feet was such a distance as to withdraw Balcom's negligence as a proximate cause of the accident.

Moreover, assuming Mathews' brakes to have been faulty, such fact would not necessarily constitute an independent intervening cause which would completely eliminate Balcom's negligence as a proximate cause.

Throughout the country there are various views applied as to the liability of one who sets in motion a chain of events leading to the injury of another. ■■■ California appears to follow the view that where the defendant's negligent conduct is the stimulus for some other act which causes the injury, there is no break in the chain of events which would prevent his liability. In *Champagne* v. *A. Hamburger & Sons* (1915), 169 Cal. 683, 689 [147 P. 954], the court said: "The proximate cause, as defined generally, is the cause which led to what might naturally and probably be expected to produce the result. Here, of course, the contention of appellant is that the injuries of the plaintiff were not caused by the fall of the elevator but by the intervening act of the crowd in rushing over her. But the intervening act of the crowd would not break the causal connection between the negligent act of operating the elevator in a crowded condition and the injuries sustained by plaintiff, if such intervening act was one which might have been foreseen as likely or probable to occur as the result of the original negligence." The court in *Titlow* v. *Florence Trading Co.* (1917), 35 Cal. App. 457, 460 [170 P. 172], said: ". . . whatever the jury assumed as an immediate cause for the precipitation of the lamp to the floor, it was justified in taking the position, the negligence of the defendant having been shown, that such immediate cause was the natural and to be expected consequence of that negligence, and that, therefore, the negligence was the proximate cause of the damage—the cause which set all other causes in motion." It was said in *Haverstick* v. *Southern Pac. Co.* (1934), 1 Cal.App.2d 605, 614 [37 P.2d 146]: " '. . . In order to make a negligent act the proximate cause of an injury, it is not necessary that the particular

injury and the particular manner of its occurrence could reasonably have been foreseen. [Citation.] If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence.' "

The cases cited in appellant's opening and closing briefs in regard to this issue are not of value because all of them deal with *independent* intervening acts—not intervening acts stimulated by defendant's negligence, as here.

██ In view of the law on this matter, and the evidence that Balcom turned onto El Camino in a position which caused Mathews to turn to an outside lane where, because of belief that he would overtake a car that was there, he applied his brakes and thus skidded into Henderson, it cannot be said as a matter of law that the trial judge was incorrect in his determination that Balcom's negligence was a proximate cause of the injury.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.